Z[No. B224303. Second Dist., Div. Five. Apr. 22, 2011.]

RORY CUIELLETTE, Plaintiff and Respondent, v.
CITY OF LOS ANGELES, Defendant and Appellant.

758

## COUNSEL

Carmen A. Trutanich, City Attorney, and Paul L. Winnemore, Deputy City Attorney, for Defendant and Appellant.

Robert E. Racine and Irving Meyer for Plaintiff and Respondent.

**O**PINION

**MOSK, J.—**

## INTRODUCTION

Defendant and appellant the City of Los Angeles (defendant or City) appeals from a judgment of $1,571,500 in favor of plaintiff and respondent Rory Cuiellette (plaintiff), a Los Angeles Police Department (LAPD) officer, on his claims of disability discrimination and failure to accommodate a disability under the California Fair Employment and Housing Act, Government Code section 12900 et seq. (FEHA).[1] On appeal, defendant contends that substantial evidence does not support the trial court's liability determination because the evidence showed that plaintiff ·was unable to perform the essential duties of a police officer with or without a reasonable accommodation. Even if defendant could not perform all of the essential functions of a police officer, he could perform the essential functions of a position into which he had been placed by the LAPD as a reasonable accommodation in accordance with its then existing practice. Accordingly, we hold that substantial evidence supports the trial court's determination that defendant is liable for a FEHA violation, and therefore affirm the judgment.

## · **BACKGROUND**

### I. *Procedures*

This matter is before us for the third time. In the first appeal, concerning defendant's action for disability discrimination under section 12940, subdivision (a) and wrongful termination, we reversed a summary judgment in defendant's favor, holding that plaintiff was not judicially estopped, as a matter of law, from pursuing his FEHA claim based on a position taken in a prior workers' compensation proceeding, and that the 100 percent total permanent disability rating plaintiff received in the workers' compensation proceeding was not, as a matter of law, a legitimate, nondiscriminatory reason for defendant's adverse employment action. In the second appeal, following a $1,571,500 jury verdict in plaintiff's favor on plaintiff's claim of disability discrimination, we held that the trial court erred in failing to instruct the jury that plaintiff had to prove that he was able to perform the essential duties of a police officer with or without a reasonable accommodation. We did not consider what such essential duties were or the requirements of reasonable

---

[1] All statutory citations are to the Government Code unless otherwise noted.

accommodation. Because defendant's challenge in the second appeal concerned the issue of liability and not damages, we held that retrial would be limited to the issue of liability, including whether plaintiff was able to perform the essential duties of a police officer with or without reasonable accommodation.

Prior to retrial, plaintiff filed a first amended complaint in which he retained his cause of action for disability discrimination (§ 12940, subd. (a)), added a cause of action for failure to accommodate a disability (§ 12940, subd. (m)), and omitted his cause of action for wrongful termination. Defendant filed an answer to the amended complaint. The parties tried the liability issues to the trial court.

## II. *Facts*

The trial court's statement of decision sets forth the relevant facts, and the City does not challenge on appeal the trial court's findings of the underlying facts. Accordingly, we quote from the trial court's statement of decision at length as follows:

"The case arises out of plaintiff Rory Cuillette's [*sic*] employment with the City of Los Angeles as a peace officer. After several years on the job, Plaintiff was injured and placed on disability leave. After his workers compensation claim resolved with a finding of 100% disability, the City accepted his request to return to work in May 2003. He worked less than five days before the City realized that he was '100% disabled' and, on that basis, sent him home."

"In the Spring of 2003, after an extended disability leave, Plaintiff contacted one of his former colleagues, Detective Bokatich, to express his interest in returning to LAPD to work in the fugitive warrants unit. Detective Bokatich asked him to provide a doctor's note. At Plaintiff's request, his treating physician, Dr. Burstein, sent the City a note authorizing Plaintiff to perform 'permanent light duty—administrative work only.' The note did not list or specify any particular restrictions on Plaintiff's activities.

"There was circumstantial evidence that this letter was satisfactory to the City because Plaintiff reported to work on May 27, 2003. The City assigned him to the 'court' or 'renditions' desk in the fugitive warrants unit [(court desk position)], a purely administrative assignment requiring no field work other than occasionally driving to a nearby courthouse to deliver papers. In

his several days in the position, Plaintiff went to weapons of mass destruction training for a day, engaging in computer training and testing, and performing regular duties on the court desk, without incident. On June 3, 2003, however, his supervisor, Capt. Lindsay, informed him that the City could not allow him to work because he was '100% disabled.'

"At that time, the City of Los Angeles had a longstanding policy and practice of allowing sworn officers to perform 'light duty' assignments that did not entail several essential functions of a peace officer such as making arrests, taking suspects into custody, and driving a police vehicle in emergency situations. Lt. Lutz provided persuasive testimony that during his 12 years as the Officer in Charge of the Medical Liaison unit (1991–2002), his marching orders were to accommodate disabled officers by providing them with 'light duty' assignments. During his tenure, the City accommodated hundreds of disabled officers [by] placing them in assignments that did not require any arrests, field work, or dangerous driving. He specifically recalled assigning officers to purely administrative assignments in the drug testing and fugitive warrant units.

"Similarly, Detective Bokatich testified that he helped reassign as many as 25 disabled officers who contacted him about coming [sic] working in the fugitive warrant unit, many of whom were already drawing workers compensation benefits. Bokatich admitted that although a civilian could be trained to perform the duties on the rendition or court desk, the City routinely placed sworn officers in these positions.

"Although the 'light duty' policy remained in effect until [LAPD] Chief Bratton put an end to it, long after the events giving rise to this case, the City discussed changing the policy from time to time. Various supervisors drafted documents defining the essential functions of a sworn peace officer. Consistent with the State of California's Peace Officer Standards and Training (Penal Code section 13510 et seq.), these drafts identified, as essential duties, many stressful and strenuous tasks, such as making arrests, taking suspects into custody, operating vehicles in emergency situations, and training exercises that simulated such duties.

"There was no dispute, at trial, that in 2003, Plaintiff's disabilities prevented him from performing these more rigorous functions. There was persuasive evidence, however, that notwithstanding the essential nature of these duties generally, the City maintained permanent 'light duty' vacancies

in the drug testing and fugitive warrants units for the specific purpose of accommodating disabled officers who wanted to continue to work.

"When he was placed in the fugitive warrants unit in May 2003, Plaintiff was a beneficiary of this policy. He was uniquely qualified to perform the administrative duties that the City assigned to him. Before he became disabled, he worked as an Investigator in the fugitive warrants unit, tasked with finding fugitives and taking them into custody while performing the same or similar administrative functions that he was asked to perform in 2003. Plaintiff testified that his supervisors praised his performance as a fugitive warrants Investigator and that he was performing his administrative functions equally well when he returned to the unit in 2003. There was no evidence suggesting otherwise and no evidence that Plaintiff's disabilities compromised his ability to perform the administrative duties in 2003. To the contrary, Plaintiff testified that he had no problem getting to work, getting around the office, or getting to the courthouse in order to perform his duties. Plaintiff therefore proved, by a preponderance of evidence, that the City placed him into one of several fully funded, vacant 'light duty' positions and that he could perform all of the essential functions of the 'light duty' assignment. In other words, he proved that he could perform the essential functions of the position he aspired to fill and actually filled for a brief period of time.

"The City's evidence that it did not formally designate the positions as 'permanent light duty' does not compel a contrary result. Regardless how the positions were labeled, the City, in fact, had an informal policy of permanently assigning disabled officers to positions that did not require many of the essential functions of a sworn police officer. Indeed, Detective Bokatich confirmed this when he testified that only sworn officers worked the court or rendition desk (even though many of these positions were strictly administrative).

"The testimony that no one could recall placing an officer with a 100% disability on 'light duty' is beside the point because workers compensation and FEHA require separate inquiries. For FEHA, the question is whether Plaintiff's medical restrictions prevented him from performing the essential functions of the position that he held or that he desired to fill. In this case, Plaintiff proved that he could.

"The City's evidence that it had a legitimate nondiscriminatory reason for displacing him from the position—i.e., medical restrictions that made him

unable to perform the 'light duty' assignment with or without accommodation—was not persuasive. Although Lindsay testified that he saw one or more documents detailing Plaintiff's historical medical restrictions before deciding to send him home, the City was unable to identify or produce any such documents. There was no indication, moreover, that the documents he reviewed reflected Plaintiff's medical condition as of May, 2003.

"The more persuasive evidence suggested that Lindsay was more focused on the workers compensation administrator's concern about re-employing Plaintiff than on any medical restrictions *per se*. Cambridge Associates—a third party workers compensation claims administrator recently hired by the City for its expertise in managing workers compensation cases—instigated the decision to send Plaintiff home because of its concern that the City could not place someone in the workplace who, for purposes of workers compensation, was '100% disabled.' There is a strong inference that Lindsay and others involved in the decision deferred to Cambridge's presumed expertise, not realizing that having already placed Plaintiff into the 'light duty' assignment, the City had an independent duty to comply with FEHA.

"Officer Thom Brennan and his subordinate, Gus Martinez, deferred to Cambridge as well. Brennan was the commanding officer of personnel from 2000-2006, a position that included oversight of the Medical Liaison department. Brennan admitted, at trial, that the department's policy back then was always to follow restrictions communicated by the workers compensation personnel on such matters. He recalled that Gus Martinez, the officer in charge of the Medical Liaison department in May 2003, expressed concern about Plaintiff's return to work based on a recommendation from a Cambridge employee. Martinez told Brennan that with a 100% disability rating, there was no way to accommodate Plaintiff, and that no one else with a 100% disability had ever tried to return to work. On that basis, Brennan approved the decision to send Plaintiff home.

"In addition to considering Cambridge's advice regarding workers compensation issues, the City should have independently evaluated Plaintiff's situation with reference to FEHA. When Plaintiff returned to work in 2003, he informed the City that he was disabled by providing Dr. Burstein's note. Although the letter did not specify or list the medical limitations on Plaintiff's activities, it indicated that Plaintiff could perform 'light duty' work and, with nothing more specific, the City allowed Plaintiff to return to work. Meanwhile, the City's workers compensation administrator had extensive files and information about Plaintiff's disabilities and past restrictions which included

restrictions on climbing and descending stairs, lifting heavy objects, walking, prolonged standing, undue emotional distress, heavy work, and exposure to dust fumes wetness and humidity (none of which would necessarily impact his performance on the renditions desk). Nevertheless, if the City had concerns about these restrictions, it had an affirmative duty to engage in an interactive process and to make an effort to accommodate Plaintiff, rather than simply take him off the job." (Fns. omitted.)

## DISCUSSION

Defendant contends that the trial court's findings of liability on plaintiff's disability discrimination and failure to accommodate claims are not supported by substantial evidence because the evidence showed that plaintiff was unable to perform the essential duties of a police officer with or without a reasonable accommodation, even if he was able to perform the essential duties of the court desk position.

### I. Standard of Review

"In general, in reviewing a judgment based upon a statement of decision following a bench trial, 'any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision. [Citations.]' [Citation.] In a substantial evidence challenge to a judgment, the appellate court will 'consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings]. [Citations.]' [Citation.] We may not reweigh the evidence and are bound by the trial court's credibility determinations. [Citations.] Moreover, findings of fact are liberally construed to support the judgment. [Citation.]" (*Estate of Young* (2008) 160 Cal.App.4th 62, 75–76 [72 Cal.Rptr.3d 520].)

"Questions of statutory interpretation, and the applicability of a statutory standard to undisputed facts, present questions of law, which we review de novo. [Citation.]" (*Jenkins v. County of Riverside* (2006) 138 Cal.App.4th 593, 604 [41 Cal.Rptr.3d 686].) What plaintiff had to show in order to prevail on his FEHA claim is a question of statutory interpretation that we review de novo.

### II. Application of Relevant Principles

#### A. Disability Discrimination

■  Under the FEHA, it is unlawful for an employer to discriminate against an employee because of the employee's physical disability. (§ 12940,

subd. (a); *Green v. State of California* (2007) 42 Cal.4th 254, 262 [64 Cal.Rptr.3d 390, 165 P.3d 118] (*Green*).) Section 12940 specifically limits the reach of this proscription, however, "excluding from coverage those persons who are not qualified, even with reasonable accommodation, to perform essential job duties: 'This part does not prohibit an employer from refusing to hire or discharging an employee with a physical or mental disability . . . where the employee, because of his or her physical or mental disability, is unable to perform his or her essential duties even with reasonable accommodations, or cannot perform those duties in a manner that would not endanger his or her health or safety or the health or safety of others even with reasonable accommodations.' (§ 12940, subd. (a)(1).)" (*Green, supra*, 42 Cal.4th at p. 262.)

Section 12940 does not classify all distinctions employers make on the basis of physical disability as unlawful discrimination. (*Green, supra*, 42 Cal.4th at p. 262.) Instead, such distinctions are prohibited *"only if* the adverse employment action occurs because of a disability *and* the disability would not prevent the employee from performing the essential duties of the job, at least not with reasonable accommodation. Therefore, in order to establish that a defendant employer has discriminated on the basis of disability in violation of the FEHA, the plaintiff employee bears the burden of proving he or she was able to do the job, with or without reasonable accommodation." (*Ibid.*)

## B. *Reasonable Accommodation*

■ The FEHA imposes on employers the duty reasonably to accommodate their employees' physical disabilities. (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1003 [93 Cal.Rptr.3d 338].) Section 12940, subdivision (m) provides that it is an unlawful employment practice for an employer to "fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee." "The essential elements of a failure to accommodate claim are: (1) the plaintiff has a disability covered by the FEHA; (2) the plaintiff is a qualified individual (i.e., he or she can perform the essential functions of the position); and (3) the employer failed to reasonably accommodate the plaintiff's disability. (*Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245, 256 [102 Cal.Rptr.2d 55] (*Jensen*).)" (*Wilson v. County of Orange* (2009) 169 Cal.App.4th 1185, 1192 [87 Cal.Rptr.3d 439].)

Under the FEHA, "reasonable accommodation" means "a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired." (*Nadaf-Rahrov v. Neiman Marcus Group, Inc.* (2008) 166 Cal.App.4th 952, 974 [83 Cal.Rptr.3d 190].) "If the employee cannot be accommodated in his or her existing position and

the requested accommodation is reassignment, an employer must make affirmative efforts to determine whether a position is available. (*Spitzer* [*v. Good Guys, Inc.* (2000)] 80 Cal.App.4th [1376,] 1389 [96 Cal.Rptr.2d 236].) A reassignment, however, is not required if 'there is no vacant position for which the employee is qualified.' (*Ibid.*; see *School Bd. of Nassau County v. Arline* (1987) 480 U.S. 273, 289, fn. 19 [94 L.Ed.2d 307, 107 S.Ct. 1123] ['Employers have an affirmative obligation to make a reasonable accommodation for a handicapped employee. Although they are not required to find another job for an employee who is not qualified for the job he or she was doing, they cannot deny an employee alternative employment opportunities reasonably available under the employer's existing policies. [Citations.]'].) 'The responsibility to reassign a disabled employee who cannot otherwise be accommodated does "not require creating a new job, moving another employee, promoting the disabled employee or violating another employee's rights . . . ." ' (*Spitzer*, at p. 1389; see also *McCullah v. Southern Cal. Gas Co.* (2000) 82 Cal.App.4th 495, 501 [98 Cal.Rptr.2d 208] (*McCullah*) ['The employer is not required to create new positions or "bump" other employees to accommodate the disabled employee.'].) 'What is required is the "*duty* to reassign a disabled employee if an already funded, vacant position *at the same level* exists." [Citations.]' (*Hastings v. Department of Corrections* (2003) 110 Cal.App.4th 963, 972 [2 Cal.Rptr.3d 329] (*Hastings*); see *Spitzer*, at p. 1389.)" (*Raine v. City of Burbank* (2006) 135 Cal.App.4th 1215, 1223 [37 Cal.Rptr.3d 899] (*Raine*); see § 12926, subd. (n); *Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 950–951 [62 Cal.Rptr.2d 142] ["an employer who knows of the disability of an employee has an affirmative duty to make known to the employee other suitable job opportunities with the employer and to determine whether the employee is interested in, and qualified for, those positions, if the employer can do so without undue hardship or if the employer offers similar assistance or benefit to other disabled or nondisabled employees or has a policy of offering such assistance or benefit to any other employees"].)

■ "Under the FEHA . . . an employer is relieved of the duty to reassign a disabled employee whose limitations cannot be reasonably accommodated in his or her current job only if reassignment would impose an 'undue hardship' on its operations or if there is no vacant position for which the employee is qualified." (*Spitzer v. Good Guys, Inc., supra*, 80 Cal.App.4th at p. 1389.) For purposes of an alleged failure reasonably to accommodate a disability, a "plaintiff proves he or she is a qualified individual by establishing that he or she can perform the essential functions of the position to which reassignment is sought, rather than the essential functions of the existing position." (*Jensen v. Wells Fargo Bank, supra*, 85 Cal.App.4th at p. 256 (*Jensen*); see *Raine, supra*, 135 Cal.App.4th at p. 1223, fn. 5.) An employer is not obligated, however, to make a temporary position available indefinitely

once the employee's temporary disability becomes permanent. (*Raine, supra*, 135 Cal.App.4th at p. 1224.)

## C. *The Trial Court's Ruling*

In its statement of decision, the trial court said, "The court finds that the City is liable for disability discrimination based on adverse employment action. In May 2003, it maintained several permanent 'light duty' assignments and filled the assignments with sworn officers whose disabilities prevented them from performing the otherwise essential functions of a sworn police officer. The City placed Plaintiff into one of these assignments. Although Plaintiff was able to perform the essential functions of this 'light duty' assignment, Plaintiff's supervisors decided to 'send him home' after learning, from the City's worker's compensation administrator, that he was '100% disabled.' The City's decision to send him home was an adverse employment action based on discriminatory criteria. At trial, the City failed to prove any legitimate nondiscriminatory basis for terminating his employment, and is therefore liable for discrimination.

"The court also finds that the City is liable for failure to engage in an interactive process or to otherwise accommodate Plaintiff's disability. After years of workers compensation litigation, the City had extensive knowledge about Plaintiff's past disabilities. The City's decision to bring him back to work notwithstanding its pre-existing knowledge of his disabilities was sufficient to shift the burden of proof and require the City to demonstrate that it engaged in meaningful dialogue with Plaintiff and made reasonable accommodations. Instead of engaging in a dialogue, the City summarily instructed him to leave the workplace and is therefore liable."

## D. *Analysis*

Defendant challenges the trial court's liability findings on plaintiff's disability discrimination and failure to accommodate claims on a single ground: the trial court erred in finding liability because plaintiff was unable to demonstrate that he was able to perform the essential duties of a police officer with or without a reasonable accommodation. Noting that the court desk position was staffed with sworn police officers, defendant argues that officers who were employed in the court desk position were required to be able to perform all of the essential duties of a police officer, not solely the essential duties of the court desk position. According to defendant, the essential duties that all police officers must be able to perform include "working in the field making life or death decisions; working any patrol or field assignment; making a forcible arrest; driving a City vehicle under emergency situations; and participating in training exercises simulating an arrest or emergency situation."

Pursuant to long-standing policy and practice, the LAPD had a significant number of *permanent* light-duty assignments in which it placed police officers who, because of medical restrictions, could not perform all of the essential duties of a police officer. In this regard, LAPD Lieutenant Lutz testified that in 2002 and 2003, the LAPD employed about 8,500 sworn police officers, approximately 3,000 of whom worked with medical restrictions. Of the 3,000 police officers with medical restrictions, the LAPD employed about 250 officers in *"permanent* light duty positions that would not allow them to work the field." (Italics added.)

Because the LAPD maintained permanent light-duty positions that it staffed with police officers who could not perform all of the essential duties of a police officer, the relevant inquiry is whether plaintiff was able to perform the essential duties of the light-duty assignment he was given on his return to work and not whether he was able to perform all of the essential duties of a police officer in general. (See *Stone v. City of Mount Vernon* (2d Cir. 1997) 118 F.3d 92, 99 (*Stone*); Chin et al., Cal. Practice Guide: Employment Litigation (The Rutter Group 2010) ¶ 9:673, pp. 9-66 to 9-67 (rev. # 1 2009); *Raine, supra*, 135 Cal.App.4th at p. 1223, fn. 5 ["Although the City urges summary judgment was properly granted because it is undisputed Raine could not perform the essential functions of a patrol officer, when the accommodation sought is job reassignment, the relevant inquiry is whether the employee is qualified and able to perform the essential functions 'of the position to which reassignment is sought, rather than the essential functions of the existing position.' (*Jensen, supra*, 85 Cal.App.4th at p. 256.)"].)

In *Raine, supra*, 135 Cal.App.4th 1215, plaintiff Raine, a Burbank police officer, was placed in a front-desk assignment while he was attempting to recover from injuries. There was no question he could perform those front-desk functions. Normally, that front-desk position was staffed with civilians, not police officers, although the position was "also reserved as a temporary light-duty assignment for police officers recovering from injuries." (*Id.* at p. 1219.) The court ruled that the City of Burbank had no duty under the FEHA to make Raine's temporary front-desk assignment permanent. (135 Cal.App.4th at p. 1228.) The instant case is distinguishable from *Raine* because the LAPD did not at the time in issue restrict the placement of disabled officers into *temporary* light-duty jobs.

In *Stone, supra*, 118 F.3d 92, an active firefighter (Stone) assigned to fire-suppression duties, which principally included extinguishing fires, entering burning buildings, and performing rescues, was rendered a paraplegic in an off-duty accident. (*Id.* at p. 93.) After a period of rehabilitation, Stone sought to return to active duty in a light-duty assignment in which his

disability could be accommodated. (*Id.* at p. 94.) Stone identified the Fire Alarm Bureau (FAB), a light-duty bureau, as one possible assignment. (*Id.* at pp. 93–94.) Stone's employer—the fire department—told Stone that he could not be accommodated and could not return to work. (*Ibid.*) Stone brought an action claiming that his employer violated the Americans with Disabilities Act of 1990, 42 United States Code sections 12101–12213 (ADA), and the Rehabilitation Act of 1973, 29 United States Code sections 701–797b[2] in refusing to accommodate his disability by giving him a light-duty assignment—the FAB. (118 F.3d at pp. 93–94.)

The fire department asserted it had a policy that it would only assign two categories of firefighters to the FAB and to another light-duty bureau—the Fire Prevention Bureau (FPB): those who suffered an on-duty injury and were entitled indefinitely to receive full salary without working and those who suffered a temporary injury. Stone did not fit into either category. (*Stone, supra,* 118 F.3d at p. 94.) The fire commissioner said that all of the firefighters had to be available and ready to perform fire-suppression duties because the department needed to have all of the 109 firefighters available for that purpose and budgetary restraints on expanding the number of employees effectively precluded adding to the workforce those who could not engage in fire suppression. (*Ibid.*)

Stone's employer brought a motion for summary judgment on the ground that all of its firefighters, regardless of the bureau to which they were assigned, had to be available and ready to perform fire-suppression duties. (*Stone, supra,* 118 F.3d at p. 94.) Stone opposed the motion on the ground that fire suppression was not an essential function of a position in the FAB. (*Ibid.*) The district court granted summary judgment to the employer, finding that although Stone was able to perform most, if not all, of the essential functions of the FAB with reasonable accommodation, Stone had failed to show that he was able to perform the essential functions of a firefighter, which included climbing ladders, entering burning buildings, and performing salvage operations at fires. (*Id.* at pp. 93, 95–96.)

On appeal, the court reversed the order granting summary judgment, in part based on its conclusion that the district court gave undue weight to the title of "firefighter" when it considered whether Stone could perform the essential functions of the position he sought. (*Stone, supra,* 118 F.3d at p. 99.)

---

[2] The definition of "essential functions" under the ADA (42 U.S.C. § 12101 et seq.) set forth at 29 Code of Federal Regulations part 1630.2(n) (2010) is comparable to the definition of that term under the FEHA. "Although the Legislature has declared that FEHA is intended to be independent of, and provide greater protection than, the ADA (see § 12926.1, subd. (a)), when, as here, provisions of the two acts are similarly worded, federal decisions interpreting the ADA are instructive in applying FEHA. [Citations.]" (*Raine, supra,* 135 Cal.App.4th at p. 1226, fn. 7.)

The court said that the proper focus is on the fundamental job duties of the position that the person with a disability desires, rather than solely on the title held by a person occupying that position or the other positions occupied by most persons holding that title. (*Ibid.*; see also *Felix v. New York City Transit Authority* (S.D.N.Y. 2001) 154 F.Supp.2d 640, 656.) The court determined "on the basis of the present record, a reasonable fact finder could infer that the assignment [to the FAB or the FPB] of a single disabled employee whose only limitation is that he cannot engage in fire-suppression activity is neither an accommodation that would be unreasonable nor a hardship that would be undue." (*Stone, supra*, 118 F.3d at p. 101.) According to the court, the plaintiff must " 'suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits.' [Citation.] . . . The defendant must then show that the accommodation is not reasonable, or that it imposes an undue hardship . . . ." (*Id.* at p. 98.) The court noted that a career placement in the FAB and FPB "is not unprecedented." (*Id.* at p. 100.) That Stone was "seeking to retain the job he had under then existing policies," has been considered significant. (*Parisi v. Coca-Cola Bottling Co. of New York* (E.D.N.Y. 1998) 995 F.Supp. 298, 304.) The court reversed the summary judgment, noting that the decision did not preclude "a judgment as a matter of law upon further development of the record." (*Stone, supra*, at p. 101.)

Here, the trial court properly focused on the essential functions of the court desk position, the position plaintiff sought, and not on the essential functions of the police officer position, the job title plaintiff held. (See *Stone, supra*, 118 F.3d at p. 99.) Defendant does not challenge the trial court's finding that plaintiff was able to perform the essential duties of the court desk position on his return to work—an existing position to which he had been assigned in conformity with then existing policies.

Substantial evidence supports the trial court's findings that defendant violated the FEHA when, in light of existing policies, it sent plaintiff home from work based on the 100 percent total permanent disability rating plaintiff received in the workers' compensation proceeding (*Green, supra*, 42 Cal.4th at p. 262) and when it failed reasonably to accommodate plaintiff upon sending him home from work. The trial court found that during 2003, when plaintiff was assigned to his court desk position, the LAPD "maintained several permanent 'light duty' assignments and filled the assignments with sworn officers whose disabilities prevented them from performing the otherwise essential functions of a sworn police officer." This finding is supported by substantial evidence. Lieutenant Lutz testified that in 2003, the LAPD had an accommodation policy pursuant to which the LAPD would "[b]asically find the employee an inside job, either working a desk or an administrative position or staff writing position that would not require him to be exposed to the restrictions that he had, and to place that individual in that position." Lieutenant Lutz explained that under the accommodation policy, if an officer

was "marginally capable of performing some sort of duties within the Los Angeles Police Department, that it was the responsibility of Medical Liaison to find [the officer] that job." Asked to explain the source of the policy, Lieutenant Lutz stated the policy "basically" came from a succession of Los Angeles police chiefs—Gates, Williams, and Parks—on down during the 10 years that Lieutenant Lutz worked in the Medial Liaison unit.

Consistent with its accommodation policy, upon presentation of a doctor's note clearing plaintiff for "permanent light duty—administrative work only," the LAPD allowed plaintiff to return to work in May 2003 and placed him in the court desk position. As stated above, the trial court found that plaintiff could perform the essential duties of the court desk position. For purposes of a claimed failure reasonably to accommodate a disability, a "plaintiff proves he or she is a qualified individual by establishing that he or she can perform the essential functions of the position to which reassignment is sought, rather than the essential functions of the existing position." (*Jensen, supra,* 85 Cal.App.4th at p. 256; see *Raine, supra,* 135 Cal.App.4th at p. 1223, fn. 5; *Stone, supra,* 118 F.3d at p. 99; *School Bd. of Nassau County v. Arline, supra,* 480 U.S. at p. 289, fn. 19 [an employer may not deny a "handicapped" employee who is not qualified for the job he was doing an alternative employment opportunity reasonably available under the employer's existing policies]; *Prilliman v. United Air Lines, Inc., supra,* 53 Cal.App.4th at pp. 950–951.) There was no showing or claim that assigning plaintiff to this position or that the policy then in effect caused an undue or unreasonable hardship to the LAPD.

■ Because plaintiff was qualified to perform the essential duties of the court desk position and was placed in that position pursuant to the LAPD's accommodation policy then in effect, his removal from that position based on the 100 percent total permanent disability rating plaintiff received in the workers' compensation proceeding violated the accommodation provisions of section 12940, subdivision (m). (See *Raine, supra,* 135 Cal.App.4th at p. 1223.) As noted, the LAPD's policy of accommodating disabled officers by allowing them to perform light-duty assignments has been changed. We affirm the trial court's finding of liability under the LAPD policy in effect when plaintiff was sent home and the facts presented to the trial court, and express no opinion as to the FEHA requirements under later policies or other factual scenarios.

## DISPOSITION

The judgment is affirmed. Plaintiff is awarded his costs on appeal.

Armstrong, Acting P. J., and Kriegler, J., concurred.