Filed 7/13/16  Marriage of Shine CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of PAULA SHINE and DARREN SHINE. | D069067 |
| PAULA SHINE, | |
| Respondent, | (Super. Ct. No. FAMVS900897) |
| v. | ORDER MODIFYING OPINION |
| DARREN SHINE, | [NO CHANGE IN JUDGMENT] |
| Appellant. | |

THE COURT

It is ordered that the opinion filed herein on July 11, 2016 be modified as follows:

In the first sentence on page one, the words "San Diego" should be replaced with the words "San Bernardino."

There is no change in judgement.

_____

BENKE, Acting P. J.

Copies to:  All parties

Filed 7/11/16  Marriage of Shine CA4/1 (unmodified version)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of PAULA SHINE and DARREN SHINE. | D069067 |
| PAULA SHINE, | |
| Respondent, | (Super. Ct. No. FAMVS900897) |
| v. | |
| DARREN SHINE, | |
| Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Khymberli

S. Apaloo, Judge.  Affirmed.

Alderson Law Firm and James A. Alderson for Appellant.

No appearance for Respondent.

After a long-term marriage, the trial court in this dissolution proceeding awarded

one spouse $1,000 a month in alimony.  The trial court based its ruling not only its

finding as to the length of the marriage, but also its determination that the parties

experienced a working class lifestyle during the course of their marriage; that the supported spouse, respondent Paula Shine, had limited earnings and a plate in her neck; and that the supporting spouse, Darren Shine, was employed, healthy, and had some assets. In light of its findings, which are fully supported by the record, the trial court did not abuse its discretion in making the award of spousal support. Accordingly, we affirm the trial court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

The Shines were married on November 25, 1989 and separated on December 31, 2005. There were no minor children of the marriage. Status was determined by way of a bifurcated judgment on August 8, 2011. Paula did not seek any temporary spousal support following the parties' separation; nonetheless, during the course of the dissolution proceeding she asked for an award of permanent spousal support. After Paula resisted responding to discovery requests by Darren, and the trial court limited the documents she could rely on at trial, the issue of permanent spousal support was finally heard on the merits by the trial court over several days between November 22, 2013 and January 23, 2014.

At trial, the parties disputed when the marriage ended: Darren claimed it ended in 2002, and Paula claimed the marriage ended on February 17, 2007. In finding that the marriage ended on December 31, 2005, the trial court stated: "[T]his was probably the most difficult area to try to figure out because Ms. Shine was very certain as to what things happened and when they happened. [¶] Mr. Shine was very unsure about the dates of things, even things that I think he would tend to remember." In resolving the

2

dispute, the court relied on the oldest tax returns provided by the parties, which for the tax year 2006 showed that Paula filed as a head of household and Darren filed as a single person. Because only single people may file such returns, the trial court reasoned that, notwithstanding Paula's more credible memory of events, the marriage ended no later than December 31, 2005.

In finding that the parties had a working class lifestyle the court stated: "They owned a home. They had modest cars, a truck. They didn't really seem to travel all that much, maybe a couple of times, you know, to the east coast, maybe a few trips to Las Vegas. It wasn't anything extraordinary. They did a lot of local entertainment type of things. They had a very working class life style of living, which they both seem to indicate that there was not a whole lot of money that they had left in savings by the time that they had separated, that they had really used most of it to live and kind of used everything up as they went along."

With respect to Paula, the court found that she has a bachelor's degree in sociology and had taught and worked as a day care worker for approximately 19 years. The court noted that she has aspirations to become a speech pathologist, but that she would need additional training and education. The court found that, consistent with her declaration, she had income of $1,077 a month and that she had been living with friends since 2012. The court also found that she had a plate in her neck and that "[s]he has days where she has a lot of trouble and remembering." The court noted Paula testified that, in getting her bachelor's degree, she had acquired $92,000 in student debt and that she had received an equalization payment of $13,000.

3

With respect to Darren, the court found that he had income of $5,700 a month, that he worked as a mechanic, and that there was no evidence that suggested he had any medical condition that prevented him from working. The court noted that Darren owned a brownstone building in New York, which he had inherited and in which he invested a great deal of his earnings.

As we indicated at the outset, based on its findings the trial court awarded Paula $1,000 in month in spousal support. Darren filed a timely notice of appeal.

DISCUSSION

I

On appeal, we presume that a judgment or order of a lower court is correct. The general rule is that " '[a]ll intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) " '[I]n reviewing a judgment based upon a statement of decision following a bench trial, "any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision. [Citations.]" [Citation.] In a substantial evidence challenge to a judgment, the appellate court will "consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings]. [Citations.]" [Citation.] We may not reweigh the evidence and are bound by the trial court's credibility determinations. [Citations.] Moreover, findings of fact are liberally construed to support the judgment.' " (*Cuiellette*

4

*v. City of Los Angeles* (2011) 194 Cal.App.4th 757, 765 (*Cuiellette*).)

Where the sufficiency of the evidence is challenged on appeal, "the reviewing court must start with the presumption that the record contains evidence sufficient to support the judgment; it is the appellant's burden to demonstrate otherwise." (*Baxter Healthcare Corp. v. Denton* (2004) 120 Cal.App.4th 333, 368.) We are required to presume that the record contains sufficient evidence to support the trial court's finding, unless the appellant affirmatively demonstrates that the evidence is insufficient. (*Ibid.*)

The substantial evidence standard of review applies to both the express and implied findings of fact made by the trial court. (*SFPP v. Burlington Northern & Santa Fe Ry. Co.* (2004) 121 Cal.App.4th 452, 462.) "The doctrine of implied findings is based on our Supreme Court's statutory construction of [Code of Civil Procedure] section 634 and provides that a 'party must state any objection to the statement in order to avoid an implied finding on appeal in favor of the prevailing party. . . . [I]f a party does not bring such deficiencies to the trial court's attention, that party waives the right to claim on appeal that the statement was deficient . . . and hence the appellate court will imply findings to support the judgment.' " (*Ibid.*)

In addition to the foregoing general principles of review, this appeal is subject to more specific substantive rules governing awards of permanent spousal support. " 'In awarding spousal support, the court must consider the mandatory guidelines of [Family Code] section 4320. Once the court does so, the ultimate decision as to amount and duration of spousal support rests within its broad discretion and will not be reversed on appeal absent an abuse of that discretion.' " (*In re Marriage of Cheriton* (2001) 92

5

Cal.App.4th 269, 283 (*Cheriton*).)

Section 4320 provides: "In ordering spousal support under this part, the court shall consider all of the following circumstances:

"(a) The extent to which the earning capacity of each party is sufficient to maintain the standard of living established during the marriage, taking into account all of the following:

"(1) The marketable skills of the supported party; the job market for those skills; the time and expenses required for the supported party to acquire the appropriate education or training to develop those skills; and the possible need for retraining or education to acquire other, more marketable skills or employment.

"(2) The extent to which the supported party's present or future earning capacity is impaired by periods of unemployment that were incurred during the marriage to permit the supported party to devote time to domestic duties.

"(b) The extent to which the supported party contributed to the attainment of an education, training, a career position, or a license by the supporting party.

"(c) The ability of the supporting party to pay spousal support, taking into account the supporting party's earning capacity, earned and unearned income, assets, and standard of living.

"(d) The needs of each party based on the standard of living established during the marriage.

"(e) The obligations and assets, including the separate property, of each party.

"(f) The duration of the marriage.

"(g)  The ability of the supported party to engage in gainful employment without unduly interfering with the interests of dependent children in the custody of the party.

"(h)  The age and health of the parties.

"(i)  Documented evidence, including a plea of nolo contendere, of any history of domestic violence, as defined in Section 6211, between the parties or perpetrated by either party against either party's child, including, but not limited to, consideration of emotional distress resulting from domestic violence perpetrated against the supported party by the supporting party, and consideration of any history of violence against the supporting party by the supported party.

"(j)  The immediate and specific tax consequences to each party.

"(k)  The balance of the hardships to each party.

"(*l*)  The goal that the supported party shall be self-supporting within a reasonable period of time.  Except in the case of a marriage of long duration as described in Section 4336, a 'reasonable period of time' for purposes of this section generally shall be one-half the length of the marriage.  However, nothing in this section is intended to limit the court's discretion to order support for a greater or lesser length of time, based on any of the other factors listed in this section, Section 4336, and the circumstances of the parties.

"(m)  The criminal conviction of an abusive spouse shall be considered in making a reduction or elimination of a spousal support award in accordance with Section 4324.5 or 4325.

"(n)  Any other factors the court determines are just and equitable."

"The first of the enumerated circumstances, the marital standard of living, is

7

relevant as a reference point against which the other statutory factors are to be weighed."
(*Cheriton*, *supra*, 92 Cal.App.4th at p. 303.)  Nonetheless, " '[i]n making its spousal
support order, the trial court possesses broad discretion so as to fairly exercise the
weighing process contemplated by section 4320, with the goal of accomplishing
substantial justice for the parties in the case before it.' [Citation.]  In balancing the
applicable statutory factors, the trial court has discretion to determine the appropriate
weight to accord to each.  [Citation.]  But the 'court may not be arbitrary; it must exercise
its discretion along legal lines, taking into consideration the applicable circumstances of
the parties set forth in [the statute], especially reasonable needs and their financial
abilities.' [Citation.]  Furthermore, the court does not have discretion to ignore any
relevant circumstance enumerated in the statute.  To the contrary, the trial judge must
both recognize and *apply* each applicable statutory factor in setting spousal support."  (*Id.*
at p. 304.)

II

On appeal, Darren argues the trial court abused its discretion in failing to impute
income to Paula and in determining Paula's actual income.

A.  Imputed Income

A court may, if the record supports it, impute income by considering a spouse's
capacity to earn income.  (See *Cheriton*, *supra*, 92 Cal.App.4th at p. 308.)  Here, Darren
contends that the trial court should have rejected Paula's claims that the plate in her neck
limited her ability to earn more income, especially in light of the bachelor's degree she
earned during the marriage.  He also criticizes Paula's efforts to find employment and in

8

particular her reference to her neck plate in employment applications.

Darren's arguments are based entirely on his contention that Paula did not present credible evidence of her ability to work and her efforts to find employment. The trial court's statement of decision indicates that it too had some difficulty with the credibility of both parties and the absence of documentation for many of their respective claims. Nonetheless, the trial court resolved those credibility issues, based on the evidence presented by parties, largely in Paula's favor. There was nothing inherently unbelievable about Paula's testimony about the neck plate or her efforts to find work. Thus, the trial court's resolution of Paula's credibility is beyond our power of review. (See *Cuiellette*, *supra*, 194 Cal.App.4th at p. 765.)

B. Actual Income

In attacking the trial court's findings with respect to Paula's actual income, Darren relies on discrepancies between the limited income Paula reported and her bank deposits. However in light of her receipt of $92,000 in student loans, her receipt of the $13,000 equalization payment and any proceeds from the disposition of the marital home, those discrepancies did not require the trial court to reject Paula's report of her limited income.

Darren also argues that Paula's failure to ask for temporary support undermines her claim that she needs permanent support. The fact that, by living with friends, and therefore implicitly below the marital standard of living, Paula did not feel any need to request or require temporary support, did not deprive of her the right to permanent support or prove that she had undisclosed income.

In sum, there is no basis in the record on which we may disturb the trial court's

9

findings, which in turn fully support its support award.

## DISPOSITION

The trial court's order is affirmed.[1]


BENKE, Acting P. J.

WE CONCUR:


McDONALD, J.


O'ROURKE, J.

---

[1]    Paula did not appear on appeal; hence, no cost award is appropriate here.