Filed 9/29/21  Rivas v. Pacific Laundry Services CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ROSA RIVAS,<br><br>　　Plaintiff and Appellant,<br><br>　　v.<br><br>PACIFIC LAUNDRY SERVICES, LLC,<br><br>　　Defendant and Respondent. | B303090<br><br>(Los Angeles County<br>　Super. Ct. No. BC686085) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Michelle Williams Court, Judge.  Affirmed.

Rastegar Law Group, Farzad Rastegar, Thomas S. Campbell and Rose Sorial for Plaintiff and Appellant.

Bare Law and Robert Bare for Defendant and Respondent.

\* \* \* \* \* \* \* \* \* \*

After being terminated from her job, plaintiff and appellant Rosa Rivas filed this action against her former employer, defendant and respondent Pacific Laundry Services, LLC for disability discrimination and related claims under the Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.).  At a bench trial in 2019, judgment was entered in favor of defendant from which plaintiff now appeals.

We find substantial evidence supports the judgment and therefore affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed this action in December 2017 stating six causes of action, including five FEHA claims for disability discrimination, failure to prevent and correct discrimination, failure to make reasonable accommodation, failure to engage in good faith interactive process, and retaliation, and a claim of wrongful termination in violation of public policy.

Testimony from the May 2019 bench trial established the following material facts.

**1.    Plaintiff's Testimony**

Plaintiff began working for defendant in August 2015.  She worked different positions, folding towels, sheets and other linen taken in for cleaning from various business, like hotels and restaurants.  She usually worked folding towels.  Plaintiff was repeatedly told her productivity was low.

Plaintiff admitted she could not work as quickly as her coworkers or meet the production goals set by defendant.  She preferred working with the towels but was not able to use some of the folding techniques her coworkers showed her because of the pain in her hands.  She preferred to use just her fingertips and could not grab the towels as she was shown.

2

Plaintiff was diagnosed with fibromyalgia over a decade ago. It mostly causes pain in her joints, but she also gets inflammation throughout her body, and sometimes her hands and fingers feel numb. Stress is often a trigger. Touching the linens when they were hot was also a problem. She generally takes ibuprofen for pain but it does not help much. She has also been prescribed other painkillers, like Tylenol with codeine, but they also were not particularly helpful.

Plaintiff testified she told her former supervisor Robert (last name spelled phonetically in the record as Cruck) and Betty Anderson about her medical condition but nothing was done. She recalled telling Robert she had fibromyalgia and he responded by saying, "[w]hat the hell is that?"

When Ms. Anderson took over as production manager, she told plaintiff she was investigating her work performance because of her low productivity. That was when plaintiff told Ms. Anderson she had fibromyalgia. She recalled Ms. Anderson asking if that was like having lupus.

Plaintiff said that management acted like her medical condition was not important. She asked Robert for a chair but he said something to the effect of "[w]e'll see" what Ms. Anderson thinks. She admitted she never directly asked Ms. Anderson for a chair to use while she worked. Every time she took time off for a doctor's appointment, plaintiff told Ms. Anderson it was related to fibromyalgia. Plaintiff admitted that her doctors never gave her any work restrictions related to fibromyalgia.

After Ms. Anderson became production manager, she called plaintiff into the office weekly. Plaintiff told Ms. Anderson she was doing the best she could, and sometimes she cried, but she did not feel her situation was taken seriously. Sometimes Ms. Anderson came to her work station and criticized her work in front of her

coworkers. She felt humiliated. Ms. Anderson also moved her around and assigned her work at different work stations.

One time plaintiff took off her shoes because her feet hurt from standing so long. Robert told her she could not work barefoot because it was unsanitary and a safety hazard. He suggested she find more comfortable shoes. Plaintiff said she had tried other shoes but it did not make a difference when she was standing for long periods of time. Her doctor suggested shoes with memory foam soles, and she bought some. She never asked her doctor for a note saying she should be allowed to work without shoes or recommending some other accommodation.

Eventually, plaintiff's doctor recommended she apply for medical leave. He gave her a note and told her to ask about getting leave under the Family and Medical Leave Act (FMLA). At work, she asked for a form and someone in the office gave her one. She filled it out and returned it in early October 2016. She also told Ms. Anderson she wanted to take medical leave due to her condition.

Plaintiff denied she ever told Ms. Anderson that if she did not like the way plaintiff worked, then Ms. Anderson should fire her.

During cross-examination, plaintiff was shown her deposition testimony in which she denied asking for any accommodation from either Robert or Ms. Anderson. Plaintiff responded by reasserting that she asked Robert for a chair.

Plaintiff also acknowledged that doctor notes in her medical records stated that she raised the issue of getting a permanent disability diagnosis, and her doctor said a rheumatologist would need to make that diagnosis. She acknowledged another note in her medical records from the summer of 2016 in which her doctor said he would recommend four weeks of disability (ending on Aug. 2, 2016), that she would have return to work thereafter, and that she

4

understood there would be no further extensions. Plaintiff said she did not know why her doctor said she would not be given any further extensions. She also said she never asked her doctor about giving her work restrictions so she could obtain an accommodation at work.

Plaintiff conceded she declined to have cortisone injections or surgery on her hands recommended by one of her doctors because she was fearful of such procedures.

Plaintiff was terminated on October 21, 2016. On the day she was terminated, she was taken to the office at the end of her shift, given a check and told her services were no longer needed.

**2.      Ms. Anderson's Testimony**

Ms. Anderson testified she became defendant's production manager sometime in 2015. There were two floor supervisors below her. Plaintiff's productivity was always much lower than her coworkers. Ms. Anderson tried pairing her with other employees to see if she could learn better techniques from them but it never helped.

Ms. Anderson tried placing plaintiff at different work stations. She did not believe plaintiff acted disrespectfully or with anger; she just did not do the job well. Ms. Anderson did not put plaintiff on any kind of formal probation, believing it was preferable to attempt retraining and working at different stations instead. However, plaintiff was resistant to other employees showing her better techniques. She wanted to work at the napkin folding station but was never able to improve her productivity.

Ms. Anderson believed, from her observations on the factory floor, that plaintiff mainly had productivity issues due to technique and her insistence on doing things the way she wanted instead of what her coworkers tried to show her that allowed for more efficient processing. Two or three employees complained about working with

5

plaintiff because she would tell them to slow down and not make her work harder.

Ms. Anderson denied discussing personnel matters with plaintiff in front of coworkers while she was working. Those discussions were always done in her office. If she spoke with employees on the floor, it was simply to say hello.

Ms. Anderson denied plaintiff ever told her she had a medical issue that prevented her from doing her job. Plaintiff did not ask for any kind of help or special accommodation. When her low productivity was discussed, plaintiff would simply say that was all she could do. Plaintiff regularly brought in doctor's notes saying she needed to time off for an appointment, but plaintiff never said she had a chronic medical condition affecting her work. Nor did any of the notes include any work restrictions or identify any medical condition that needed accommodation. Plaintiff never told Ms. Anderson she had been diagnosed with fibromyalgia.

Ms. Anderson recalled that sometime around May 2016, plaintiff came back to work after having gallbladder surgery with a restriction of lifting no more than 15 pounds, but that was because of her surgery. It was only for a limited period of time postsurgery and was not a permanent work restriction. Ms. Anderson denied ever being given any kind of FMLA form or request from plaintiff.

Plaintiff never asked Ms. Anderson if she could have a chair or stool at her work station. Even if plaintiff had requested a chair, Ms. Anderson testified it was not possible to work from a seated position. She explained there were anti-fatigue mats on the factory floor to alleviate stress from standing, and employees are rotated to different sides of the machine every four hours so that they are using different parts of their bodies and not doing the same repetitive motions the whole day.

Ms. Anderson said there was an incident where a supervisor reported that plaintiff had taken her shoes off and would not put them back on when told to do so. There was too much of a risk of injury to have someone on the factory floor with no shoes. When Ms. Anderson asked plaintiff what she was doing, plaintiff said her feet and knees hurt. She did not say it was a regular condition. Ms. Anderson saw that plaintiff was wearing cloth shoes, so she suggested plaintiff get some shoes with better support.

When it was reported that plaintiff's productivity was getting worse, a meeting was held with plaintiff, Guadalupe Sandoval, Ms. Anderson and, later on, General Manager Christopher Fadden joined the meeting. Plaintiff was advised that her productivity was not improving and that they were going to have to let her go. Plaintiff was dismissed only because she was not improving her productivity. It had nothing to do with her taking time off to attend doctor appointments.

### 3. Testimony of Guadalupe Esquevel

Guadalupe Esquevel testified she was plaintiff's direct supervisor and was present when plaintiff was terminated. Ms. Esquevel said plaintiff's productivity was always poor and never improved despite efforts to assist her. Even before Ms. Anderson was hired, Ms. Esquevel tried working with plaintiff to help her, moving her to different stations. Plaintiff never told her she had a medical condition, and she only knew plaintiff to bring in a doctor's note as an explanation for needing time off or to take a sick day. Plaintiff would only say she could not work faster, but never said it was because of a medical condition.

### 4. Plaintiff's Coworkers' Testimony

Emma Vera and Celotilde Alvarado were two of plaintiff's coworkers. Both testified that plaintiff's productivity was always an issue and impacted how they did their work, particularly if they

were working at the same station. Plaintiff never mentioned to either of them that she was suffering pain or had a medical condition that impacted her ability to work as fast as they could. Plaintiff told Ms. Vera that defendant was "paying her the same if she did a lot or a little." Ms. Alvarado also heard plaintiff say that she got paid the same regardless of how much work she got done.

**5. Testimony of Christopher Fadden**

Christopher Fadden testified consistently with Ms. Anderson's description of the meeting at which plaintiff was let go. He said he never saw any FMLA forms from plaintiff, never learned she had reported suffering from a medical condition that impacted her work, and he never saw any doctor's notes that stated she needed any type of accommodation. He recalled an incident when plaintiff was working without shoes, which is a major safety hazard in the warehouse that could not continue.

The parties submitted closing arguments by way of written briefs. The court issued a written statement of decision in favor of defendant on all causes of action. Judgment was entered in favor of defendant on November 15, 2019.

This appeal followed.

## DISCUSSION

Plaintiff contends the trial court erred in finding that her medical disability was not a substantial motivating factor in defendant's decision to terminate her. Plaintiff argues this presents a legal issue that we are to review independently. Plaintiff says the trial court misapplied the law in making its factual findings by "improperly dissecting" her medical condition from the effect it had on her ability to work.

We are not persuaded by plaintiff's effort to reframe her evidentiary claim of error as a question of law. Plaintiff has raised

a substantial evidence question. Our standard of review in such circumstances is well established.

" 'In general, in reviewing a judgment based upon a statement of decision following a bench trial, "any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision. [Citations.]" [Citation.] In a substantial evidence challenge to a judgment, the appellate court will "consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings]. [Citations.]" [Citation.] We may not reweigh the evidence and are bound by the trial court's credibility determinations. [Citations.] Moreover, findings of fact are liberally construed to support the judgment. [Citation.]' " (*Cuiellette v. City of Los Angeles* (2011) 194 Cal.App.4th 757, 765; accord, *Ribakoff v. City of Long Beach* (2018) 27 Cal.App.5th 150, 162 (*Ribakoff*).)

There is ample evidence in the record supporting the trial court's factual findings, including that plaintiff was not subjected to discrimination or retaliation based on any medical condition and that plaintiff's alleged disability was not a substantial motivating factor in defendant's decision to dismiss her.

It was undisputed plaintiff's work performance was poor. Even plaintiff conceded her productivity was below that of her coworkers. The only evidence plaintiff offered that her low productivity was due to her fibromyalgia was her own testimony, which was wholly uncorroborated and which the court found was not credible. The court said it found "[Ms.] Anderson's testimony concerning the central events in this case to be more credible than plaintiff's testimony. Plaintiff's testimony was at times internally contradictory and inconsistent and at other times not logical.

9

[Ms.] Anderson's testimony was internally consistent and consistent with other witnesses (including plaintiff in most instances)."

Plaintiff's doctors never gave her work restrictions, except for a lifting restriction for a short period after plaintiff had gallbladder surgery unrelated to her claimed disability.  Plaintiff admitted she never asked her doctors for restrictions or asked defendant for an accommodation, except for once asking her former supervisor (Robert) for a chair.  Plaintiff never identified what type of accommodation she needed or what type of accommodation would have sufficed.

By inference, as defendant argues, plaintiff seems to suggest defendant should have accommodated her by accepting her work even though it was below expectations and slowed down other workers' productivity.  Defendant tried assigning her to different work stations, but her work was unsatisfactory at each of them.  Two of her coworkers testified plaintiff told them that she gets paid the same no matter how much she produces, from which the court could reasonably infer plaintiff was not motivated to improve her productivity.

Defendant granted all the days off plaintiff requested for illness or doctors' appointments.  Despite Ms. Anderson's numerous conversations with plaintiff about her productivity and getting a written warning, plaintiff never reported she had a medical disability.  At most, on one occasion, plaintiff told Ms. Anderson in response to being asked why she had taken off her shoes that her feet and knees hurt her.

The trial court was in the best position to assess the credibility of the witnesses' testimony.  It is not our role to reweigh that evidence or those credibility determinations.  (*Ribakoff, supra,* 27 Cal.App.5th at p. 162 [" 'A judgment or order of a lower court is

10

presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness.' "].)

## DISPOSITION

The judgment in favor of Pacific Laundry Services, LLC is affirmed. Pacific Laundry Services, LLC shall recover costs of appeal.

GRIMES, Acting P. J.

WE CONCUR:

STRATTON, J.

OHTA, J.*

---

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.