Filed 6/24/16  Goncalves v. San Diego Gas & Electric Co. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| MICHAEL GONCALVES,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>SAN DIEGO GAS & ELECTRIC COMPANY,<br><br>    Defendant and Respondent. | D067987<br><br><br>(Super. Ct. No.<br>  37-2013-00055594-CU-WT-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Judith F.

Hayes, Judge.  Affirmed.

Gilleon Law Firm and James C. Mitchell, Samuel Austin Clemens; Charles

Moore, for Plaintiff and Appellant.

Wilson Turner Kosmo and Claudette G. Wilson, Michael S. Kalt, Martina Mende

Nagle, for Defendant and Respondent.

Plaintiff Michael Goncalves sued his former employer, defendant San Diego Gas

& Electric Company (SDG&E), alleging causes of action for medical condition/physical

disability discrimination and failure to prevent physical disability discrimination under

the Fair Employment and Housing Act ((FEHA); Gov. Code,[1] § 12900 et seq.); wrongful termination of employment in violation of public policy; and retaliation.[2] In 2008, Goncalves was diagnosed with Lynch Syndrome and colorectal and other digestive tract cancers. He alleged that in 2012, SDG&E terminated him after denying him reasonable accommodation to use the restroom more frequently. The trial court granted SDG&E's summary judgment motion.

On appeal, Goncalves contends the trial court erred because he had raised triable issues of material fact as to each cause of action so as to defeat summary judgment. He also claims the court erred by not disregarding SDG&E's reply separate statement and purportedly new evidence submitted with its reply papers. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*The Complaint*

In 2003, Goncalves started working at SDG&E, and within one year was promoted to service technician, in which capacity he visited residential and commercial customers' premises to check for natural gas leaks or carbon monoxide contamination. Goncalves alleged that beginning in 2006, SDG&E required service technicians to use a gas measurement instrument (GMI) to do their job; however, the GMI's were unreliable and

---

[1] Statutory references are to the Government Code unless otherwise stated.

[2] Goncalves also alleged but subsequently dismissed causes of action for wrongful termination based on a violation of Labor Code section 1120.5, and remedies under Labor Code section 2699.

therefore dangerous to SDG&E employees and the general public, and he had complained to SDG&E about the devices.

In 2008, Goncalves's colon was surgically removed and therefore during working hours he needed to use the bathroom for bowel movements six to eight more times than before. He alleged that around March 2012, his supervisors "started denying [him] reasonable accommodation for his medical condition/physical disability and did not offer to engage in an interactive process to reach such accommodations." Goncalves alleged that he consistently received above average job performance reviews. He alleged that one supervisor told him in March 2012, "if you are physically unable to do the job 'we'll let you go.' "

Goncalves alleged that in September 2012, SDG&E accused him of falsifying company records and suspended him without pay for "stacking" job orders, meaning he reported being at a customer's premises when in fact he was elsewhere. Goncalves sued for disability discrimination under section 12940 subdivision (a), alleging that in September 2012, SDG&E had fired him for falsifying his attendance records, but that was a pretext for the fact it discriminated against him based on his disability. Goncalves further alleged SDG&E failed to accommodate his disability under section 12940, subdivision (k), despite the fact it knew that following his surgery he had not accurately recorded his numerous daily bathroom breaks in a company-issued device. Goncalves also alleged SDG&E violated public policy set forth in FEHA by wrongfully terminating him. Finally, he alleged SDG&E retaliated against him for complaining about the GMI devices. He sought punitive damages.

3

*SDG&E's Summary Judgment Motion*

SDG&E moved for summary judgment or alternatively summary adjudication. It claimed Goncalves's 2012 termination was unrelated to his colon surgery four years earlier; rather, it properly terminated him for falsifying records by stacking orders in violation of SDG&E's Code of Business Conduct, which states, "Falsifying company records is not allowed and could result in disciplinary action, up to and including termination of employment, as well as legal action against the company or you personally."

SDG&E presented evidence that it required service technicians to use a mobile data terminal (MDT) to record their different activities, including their work start and stop times, lunch breaks, and movements from one premises to another. The supervisors were able to access that information remotely. Relying on declarations from its supervisors, SDG&E also stated in its memorandum of points and authorities that its policy against falsifying records applies to acts of stacking, such as when "a technician delays inputting job-completion information into the MDT, or inputs false information suggesting the technician is at a location other than where they actually are. . . . By stacking, a Service Tech can finish work early then continue to be paid without taking on new job orders, and can mean Service Techs 'sitting on jobs a lengthy period of time so work would be removed by Dispatch. . . . It also results in Dispatch having inaccurate information about the location and workload of Service Techs. . . . [¶] . . . [¶] [Goncalves] understood that he would be terminated for falsifying SDG&E records, including inputting inaccurate information in his MDT. . . . In fact [his] supervisors and

4

his union had warned him and other service technicians up to twenty times that 'stacking' would result in termination, and he knew of three other technicians terminated for 'stacking'."

SDG&E presented evidence that it terminated Goncalves because on September 12, 2012, a supervisor saw Goncalves driving outside of his service territory during working hours. SDG&E investigated the matter and concluded Goncalves had not accurately reported his location on his MDT, and Goncalves later admitted he had stacked orders. According to SDG&E, on September 14, 2012, SDG&E supervisors tried to locate Goncalves for over an hour to check his MDT, but he was not at the place indicated on his MDT. He was eventually located at a different place. That day, Goncalves admitted to his supervisors that he had engaged in stacking on both September 12 and 14, 2012. At a subsequent meeting with his union representative present, Goncalves admitted stacking on even more days, and explained he did it because he needed to use the bathroom. SDG&E pointed out that Goncalves initially grieved his termination through his union, and during the proceedings he again admitted to stacking orders. However, his union subsequently withdrew the grievance.

SDG&E argued it was not required to engage in the interactive process to accommodate Goncalves's medical condition because following Goncalves's surgery, his doctor had released him to return to work with no restrictions. In any event, SDG&E stated it had accommodated Goncalves by allowing him to use the bathroom whenever and wherever he wanted. In particular, it agreed to let Goncalves use the bathroom at a coworker's home because that was more convenient for Goncalves. It also exempted

5

Goncalves from a transfer to a different location in order for him to continue using the bathroom at his coworker's home. Goncalves had never requested that SDG&E provide him any further accommodation.

SDG&E contended Goncalves's causes of action for failure to prevent disability discrimination and wrongful termination were derivative, and therefore failed with the FEHA disability claim. SDG&E denied retaliating against Goncalves, pointing out that its supervisors and other service technicians had expressed similar concerns about the GMI's functionality and need for frequent repair, and SDG&E encouraged employees to discuss the matter at biweekly safety meetings. SDG&E eventually replaced the devices company-wide, starting in September 2013. SDG&E also said its employees did not rely exclusively on the GMI's; rather, they were trained to detect possible gas leaks or carbon monoxide in multiple ways: scent, a soap test, a meter clock test, a drop test, a flame test, and sooting. SDG&E concluded: "Likely because of [its] responsiveness, and because [Goncalves] had alternative tests to test for gas, [he] ***never refused*** to use the GMI. . . . Nor did he file any grievance with his union, or utilize any of numerous reporting mechanisms SDG&E provided for safety concerns."

*Goncalves's Opposition*

In opposing SDG&E's motion, Goncalves stated his supervisors had claimed that he was "stacking orders" by leaving a work order "on-site" on the MDT, even after he had completed the order. He admitted doing so, but explained he did it in order to use the bathroom. Goncalves argued his supervisors "authorized and in many instances encouraged employees to enter data into their MDT that was incorrect. . . . A reasonable

6

inference from this evidence, if credited by a jury, is that entering incorrect information into an MDT was not considered falsifying company records." Goncalves also claimed a supervisor defined stacking as "an employee leaving a work order 'on-site' on the MDT, even if the order was completed, so the employee could avoid work or conduct personal business on company time and be paid. . . . This evidence and the reasonable inferences from it permit the conclusion that Goncalves'[s] stacking was not against SDG&E policy because it was not done to avoid work or to attend to personal business on the company['s] time."

Goncalves also admitted that his evidence showed "SDG&E provided reasonable accommodations to him from January 2009 until September 2012." Specifically, SDG&E allowed him to use his coworker's bathroom and did not transfer him in 2011. However, Goncalves claimed that beginning in September 2012, SDG&E stopped accommodating him based on its pretextual claim of stacking. He argued he had presented a material issue of disputed fact to defeat summary adjudication of his disability discrimination claim because a jury could conclude his "supervisors knew Goncalves was not entering correct information about the time spent 'en route' into his MDT. The deducible inference reasonably permitted from this evidence was the supervisors allowed this because they knew [he] was not doing this to avoid work or to attend to personal matters and get paid for it" but rather he did it due to his physical disability.

Goncalves claimed his supervisors knew about his medical condition and a jury could conclude that he "was requesting SDG&E to allow him a minimum of three to five

7

minutes or more for using a bathroom up to ten times in a day, a minimum of fifty minutes of company time. Thus a jury could reasonably infer two things from this evidence—Goncalves requested SDG&E to make reasonable accommodations for him so he could perform his essential job duties, and/or SDG&E had an affirmative duty to provide reasonable accommodations."

Goncalves claimed SDG&E wrongfully terminated him in violation of public policy, because he complained the GMI's "did not work properly and, after nearly five years of SDG&E working with the manufactures to solve the defects, SDG&E finally, in 2013, replaced the defective tool. [¶] Also undisputed is the fact Goncalves was the loudest complainer about the defective GMI tool, raising it once a month between 2007 and when he was terminated in September 2012. His response from SDG&E management was 'we'll get the bugs worked out.' The other response from [a supervisor] was an eye roll and [him] telling Goncalves 'you're just saying the same thing again.' "

*The Trial Court's Ruling*[3]

The court concluded SDG&E had shown it had a legitimate business reason for terminating Goncalves in light of his admission he had stacked orders. Moreover, the evidence showed he did so even when he was not using the bathroom. The court found Goncalves had failed to show SDG&E's reasoning was pretextual, pointing out that following Goncalves's surgery, his doctor had released him to work without any

---

[3]     Despite its finding Goncalves's opposition to the summary judgment motion was untimely filed and his separate statement violated Code of Civil Procedure section 437c, subdivision (b)(3) and the California Rules of Court, rule 3.1300(d), the court ruled on the motion's merits.

8

restrictions, and Goncalves had not requested any medical accommodations. The court summarily adjudicated the disability discrimination cause of action in SDG&E's favor.

In light of that ruling, the court found that Goncalves's derivative causes of action for failure to prevent discrimination and wrongful termination also lacked merit. The court also summarily adjudicated the retaliation cause of action against Goncalves, concluding he was not a whistle blower, and pointing out that other technicians, none of whom SDG&E fired, had also widely reported the GMI's defects to SDG&E management. The court also pointed out that at least five years had elapsed between Goncalves's first complaints regarding the GMI's and his termination, negating any inference of a causal relationship between the two events. The court concluded Goncalves had abandoned his punitive damages claim by failing to meaningfully address it in his opposition papers. Nonetheless, it denied the claim on the merits, ruling that he had "failed to create triable issues of material fact, by clear and convincing evidence, that [SDG&E] engaged in oppressive, fraudulent, or malicious conduct."

STANDARD OF REVIEW

We review an order granting summary judgment de novo, "considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*).) A defendant moving for summary judgment must show "that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action." (Code Civ. Proc., § 437c, subd. (p)(2).) "In performing our de novo review, we must view the evidence in a light favorable to plaintiff as the

9

losing party [citation], liberally construing [his or] her evidentiary submission while strictly scrutinizing defendants' own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor." (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.) We accept as true both the facts shown by the losing party's evidence and reasonable inferences from that evidence. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 856; *Sada v. Robert F. Kennedy Medical Center* (1997) 56 Cal.App.4th 138, 148.)

Summary judgment is appropriate only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A triable issue of material fact exists if the evidence and inferences therefrom would allow a reasonable juror to find the underlying fact in favor of the party opposing summary judgment. (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at pp. 850, 856.)

DISCUSSION

I. *The Court Did Not Err by Summarily Adjudicating the Medical Condition/Disability*
*Discrimination Claim*

In employment discrimination cases, the California Supreme Court has adopted the three-stage burden-shifting test established by *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 (*McDonnell Douglas*). As explained in *Guz, supra*, 24 Cal.4th 317, a plaintiff has the initial burden to make a prima facie case of discrimination by showing that it is more likely than not that the employer has taken an adverse employment action based on a prohibited criterion. A prima facie case establishes a presumption of

10

discrimination. The employer may rebut the presumption by producing evidence that its action was taken for a legitimate, nondiscriminatory reason. If the employer discharges this burden, the presumption of discrimination disappears. The plaintiff must then show that the employer's proffered nondiscriminatory reason was actually a pretext for discrimination, and the plaintiff may offer any other evidence of discriminatory motive. The ultimate burden of persuasion on the issue of discrimination remains with the plaintiff. (See *id.* at pp. 354-356.)

SDG&E, as the party moving for summary judgment, bears the initial burden of demonstrating that at least one of the elements of plaintiff's employment discrimination claim is without merit. (*Scalf v. D.B. Log Homes, Inc.* (2005) 128 Cal.App.4th 1510, 1518-1519 (*Scalf*).) We disagree with Goncalves that SDG&E failed to offer any evidence to sustain its burden of proof. The trial court found SDG&E had fired him for a legitimate reason—he breached the company's policy regarding stacking. The evidence described at length above satisfies the employer's burden to make a " 'sufficient showing of a legitimate reason for discharge.' " (*Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215, 225 (*Hanson*).) We conclude that based on SDG&E's evidence, the decision makers entertained an honest belief that Goncalves had engaged in stacking orders, thus violating SDG&E's policy.

Once an employer satisfies its initial burden of proving the legitimacy of its reason for termination, the presumption of discrimination disappears. (*Guz, supra,* 24 Cal.4th at p. 356.) The discharged employee seeking to avert summary judgment must present specific and substantial responsive evidence that the employer's evidence was in fact

11

insufficient or that there is a triable issue of fact material to the employer's motive. (*Hanson, supra,* 74 Cal.App.4th at p. 225.) In other words, Goncalves must produce substantial responsive evidence to show that SDG&E's ostensible motive was pretextual; that is, "that a discriminatory reason more likely motivated the employer or that the employer's explanation is unworthy of credence." (*Chiaramonte v. Fashion Bed Group, Inc.* (7th Cir.1997) 129 F.3d 391, 398 (*Chiaramonte*).)

While we must liberally construe plaintiff's showing and resolve any doubts about the propriety of a summary judgment in plaintiff's favor, plaintiff's evidence remains subject to careful scrutiny. (*Scalf, supra,* 128 Cal.App.4th at pp. 1518-1519.) We can find a triable issue of material fact "if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co., supra*, 25 Cal.4th 826.) Moreover, plaintiff's subjective beliefs in an employment discrimination case do not create a genuine issue of fact; nor do uncorroborated and self-serving declarations. (*Chiaramonte, supra,* 129 F.3d at p. 401; *Villiarimo v. Aloha Island Air, Inc.* (9th Cir. 2002) 281 F.3d 1054, 1061.) And finally, plaintiff's evidence must relate to the motivation of the decision makers to prove, by nonspeculative evidence, an actual causal link between prohibited motivation and termination. (*Saelzler v. Advanced Group 400*, *supra,* 25 Cal.4th at p. 774.)

On appeal, Goncalves does not meet his burden of showing SDG&E's reasons for terminating him were pretextual. He repeats many of the same objections raised in his motion, and insists SDG&E knew he was disabled but discriminated against him.

12

SDG&E rejoins that it "has never denied Goncalves had cancer, or that it was aware of this unfortunate fact. SDG&E has consistently acknowledged these facts and cited to this awareness and its undisputed accommodation efforts as evidence negating any rational inference of intentional discrimination."

By Goncalves's own admission, SDG&E accommodated him for over three years after his surgery, including by allowing him the convenience of using a coworker's bathroom and not transferring him in order for him to continue benefitting from that bathroom arrangement. Goncalves also claims SDG&E had to have known that following his surgery he was not correctly recording his bathroom use on the MDT; therefore, he intimates, SDG&E permitted this. But SDG&E's failure to monitor his bathroom use previously did not relieve him of his responsibility to accurately document his activities on the MDT consistent with SDG&E's policies.

Goncalves also claims that his use of an incorrect MDT code while he was using the bathroom was not stacking or a violation of SDG&E's prohibition against "falsifying company records" "unless the service technician was trying to avoid work or to be paid while attending to personal matters or not taking on new job orders." But SDG&E's policy against falsifying records contains no such qualification. Goncalves further contends only the 2012-2013 version of SDG&E's Code of Business Conduct makes a reference to falsification of records, and it appears in the form of a question and answer, and therefore he claims SDG&E did not present evidence that "stacking orders violated a settled company policy or is an offense that automatically results in termination." We conclude that it is immaterial that the policy statement is included in a question and

13

answer format. What matters is that SDG&E had a written policy against falsifying company records, and Goncalves admitted he violated that policy.

We conclude that in light of the approximately four-year gap between Goncalves's return to work from surgery without restrictions (during which time SDG&E accommodated him) and his termination, Goncalves's speculation that SDG&E's reasons for terminating him were pretextual does not suffice to create a material issue of fact. Therefore, the presumption that SDG&E discriminated against Goncalves disappears. (*Guz, supra,* 24 Cal.4th at p. 356.)

II. *Goncalves Did Not Show SDG&E Failed to Engage in the Interactive Process*

Goncalves contends SDG&E failed to accommodate him, in part claiming "[n]o request for a reasonable accommodation needs to be made when the employer is aware of an employee's physical disability or medical condition."

Having concluded Goncalves failed to show SDG&E's explanation for his termination was pretextual, we further conclude that Goncalves's failure to accommodate claim necessarily fails. It bears repeating that the issue here is falsifying records, not discrimination. Further, as in *Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1013-1014, SDG&E had no duty to provide accommodation when the doctor released Goncalves to work with no restrictions and he requested no accommodation.

"[T]he interactive process of fashioning an appropriate accommodation lies primarily with the employee." (*Spitzer v. Good Guys, Inc.* (2001) 80 Cal.App.4th 1376, 1384.) An employee cannot demand clairvoyance of his employer. (*Conneen v. MBNA America Bank, N.A.* (3d Cir.2003) 334 F.3d 318, 331 (*Conneen*).) " '[T]he employee

14

can't expect the employer to read his mind and know he secretly wanted a particular accommodation and sue the employer for not providing it.  Nor is an employer ordinarily liable for failing to accommodate a disability of which it had no knowledge.' " (*Prilliman v. United Airlines, Inc.*(1997) 53 Cal.App.4th 935, 954.)  "It is an employee's responsibility to understand his or her own physical or mental condition well enough to present the employer at the earliest opportunity with a concise list of restrictions which must be met to accommodate the employee." (*Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245, 266.)  Plaintiff therefore was obliged "to tender a specific request for a necessary accommodation." (*Spitzer, supra,* 80 Cal.App.4th at p. 1384.)

The undisputed evidence shows that Goncalves did not make a specific request for necessary accommodation.  Rather, the doctor specifically released him to work with no restrictions.  While Goncalves describes in painful detail why he needed to use the bathroom more frequently, he also indicates that SDG&E accommodated him by allowing him to use a bathroom at a coworker's home rather than use a public bathroom.  Beyond that, he simply does not establish that he made the kind of specific request for a modified work schedule required to trigger an employer's duty to provide accommodation.  We recognize that the interactive process compelled by FEHA requires flexibility by both the employer and employee, and that no magic words are required to necessitate accommodation.  But Goncalves has presented far less than what FEHA demands.  We conclude he has not sustained his burden of demonstrating a genuine issue of material fact.  It was incumbent upon him to produce clear and unambiguous doctor's orders specifying his need for further accommodation for his medical condition.

III. *The Court Did Not Err by Summarily Adjudicating the Failure to Prevent*

*Discrimination Claim*

Given our conclusion that Goncalves is not entitled to maintain a disability

discrimination cause of action, it necessarily follows he has not shown he is entitled to

maintain a failure to prevent disability discrimination claim. As this court pointed out in

a case where the trial court issued a judgment notwithstanding the verdict: " 'There's no

logic that says an employee who has not been discriminated against can sue an employer

for not preventing discrimination that didn't happen, for not having a policy to prevent

discrimination when no discrimination occurred.' " (*Trujillo v. North County Transit*

*Dist.* (1998) 63 Cal.App.4th 280, 289.)

IV. *The Court Did Not Err by Summarily Adjudicating the Wrongful*

*Discharge/Retaliation Claim*

The elements of a claim for wrongful discharge in violation of public policy are

(1) an employer-employee relationship, (2) the employer terminated the plaintiff's

employment, (3) the termination was substantially motivated by a violation of public

policy, and (4) the discharge caused the plaintiff harm. (*Haney v. Aramark Uniform*

*Services, Inc.* (2004) 121 Cal.App.4th 623, 641 (*Haney*).) At issue here is whether

Goncalves can show a triable issue of fact for a jury on the third element—that the

substantial motivation for his termination violates a public policy.

The general legal principles governing this wrongful termination claim are set

forth in *Casella v. SouthWest Dealer Services, Inc.* (2007) 157 Cal.App.4th 1127,

(*Casella*): " '[W]hile an at-will employee may be terminated for no reason, or for an

16

arbitrary or irrational reason, there can be no right to terminate for an unlawful reason or a purpose that contravenes fundamental public policy. Any other conclusion would sanction lawlessness, which courts by their very nature are bound to oppose.' [Citation.] In *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 172 . . . , the California Supreme Court held that 'at-will employees may recover tort damages from their employers if they can show they were discharged in contravention of fundamental public policy.' " (*Casella, supra,* 157 Cal.App.4th at pp. 1138-1139.)

"In *Gantt v. Sentry Insurance* [(1992)] 1 Cal.4th 1083, [overruled on another point in *Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 80, fn. 6,] the Supreme Court described 'four categories of employee conduct subject to protection under a claim of wrongful discharge in violation of fundamental public policy: "(1) refusing to violate a statute [citations]; (2) performing a statutory obligation [citation]; (3) exercising a statutory right or privilege [citation]; and (4) reporting an alleged violation of a statute of public importance [citations]." ' [Citation.] The Supreme Court cautioned that 'courts in *wrongful discharge actions* may not declare public policy without a basis in either constitutional or statutory provisions. A public policy exception carefully tethered to fundamental policies that are delineated in constitutional or statutory provisions strikes the proper balance among the interests of employers, employees and the public.' " (*Casella, supra,* 157 Cal.App.4th at p. 1139.)

To establish a claim for wrongful termination in violation of public policy, an employee must prove causation. (See CACI No. 2430 [using phrase "substantial motivating reason" to express causation].) Claims of whistleblower harassment and

17

retaliatory termination may not succeed where a plaintiff "cannot demonstrate the required nexus between his reporting of alleged statutory violations and his allegedly adverse treatment by [the employer]." (*Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1258.)

Here, in light of the fact Goncalves failed to rebut SDG&E's evidence that the reason for its terminating him was his falsifying records, that reason stands. Goncalves has similarly failed to show that the problems with the GMI were a separate cause of his termination. Indeed, Goncalves claims that beginning in 2006, SDG&E started requiring Goncalves and the other service technicians to use the GMI, and he complained about it continuously from 2007 to 2012. But he was not terminated until September 2012, making his complaints sufficiently remote from his termination as to preclude, as a matter of law, a finding of causation by a trier of fact. (Accord, *Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 615 [ruling regarding a retaliation claim brought under FEHA: " 'The causal link may be established by an inference derived from circumstantial evidence, "such as the employer's knowledge that the [employee] engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory employment decision." ' "].)[4]

_____

[4]     In his complaint, Goncalves's retaliation claim incorporates by reference a FEHA claim: "The conduct by the defendants was done with malice or oppression in conscious disregard of Goncalves's rights under FEHA and violated the public policy of California."

V. *Goncalves is Not Entitled to Maintain a Claim for Punitive Damages*

In his opposition to the summary judgment motion, Goncalves argued in a footnote, "The punitive damages motion rehashes the other parts. If Goncalves' evidence is credited by a jury, a finding of malice, oppression or fraud, normally a jury question, is possible." On appeal he argues, "If this court finds [he] raised triable issues of fact that preclude summary judgment on his four remaining causes of action, it follows he has raised triable issues of fact on his punitive damages claim." In light of our conclusion he has failed to show SDG&E was not entitled to summary judgment, it follows he cannot maintain a claim for punitive damages.[5]

---

[5] Goncalves contends the trial court should have sustained his objections and disregarded SDG&E's 283-page reply statement, which violated California Rules of Court, rule 3.1350(b) and Code of Civil Procedure, section 437c, subdivision (a). But we conclude SDG&E complied with California Rules of Court, rule 3.1350 (b), which permits a reply separate statement to refer to objections, provided the reply statement is filed separately from the other summary judgment papers.

Goncalves also contends that the court failed to rule on his objection to "additional" evidence, in the form of deposition testimony, that SDG&E submitted in its reply papers. SDG&E's unrebutted explanation of this matter states that after SDG&E filed its summary judgment motion, Goncalves deposed some SDG&E employees many months before the March 20, 2015 hearing date, and well outside the minimum 75-day notice period. "Goncalves repeatedly cited to these depositions in his opposition papers and separate statement, but he selectively edited them. . . . Accordingly, these depositions were newly brought into the opposition papers but not on the reply, wherein SDG&E simply responded to Goncalves's opposition evidence and cited to additional excerpts to put Goncalves's excerpts from these very same depositions into context." In light of the fact Goncalves first introduced these matters into evidence, we conclude that he cannot be heard to complain when SDG&E moved to admit the full excerpts of the depositions in its reply. Any evidentiary error was harmless. (See *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 280; 282.)

19

## DISPOSITION

The judgment is affirmed.  San Diego Gas & Electric Company is entitled to costs on appeal.


O'ROURKE, J.

WE CONCUR:

BENKE, Acting P. J.

HUFFMAN, J.